IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | HONORABLE JEROME B. SIMANDLE |
| v. | Criminal No. 94-398 (JBS) |
| CHARLES V. GIORDANO,<br><br>            Defendant | **OPINION** |

APPEARANCES:

Charles V. Giordano
41 Fairmount Avenue
Hackensack, New Jersey 07601
     Defendant Pro Se

Paul J. Fishman, United States Attorney
By: Jordan M. Anger, Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102


**SIMANDLE**, Chief Judge:

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendant Charles Giordano to vacate the writ of garnishment attached to his social security checks and to obtain monies previously garnished.  [Docket Item 3.]

In 1995, Giordano entered into a plea agreement with the United States, admitting to charges of conspiracy to receive and solicit money to influence the operations of an employee benefit

plan, embezzlement of pension funds, and income tax evasion.  On
August 15, 1996, the Court sentenced Giordano to twenty months
in prison, followed by three years of supervised release and
ordered Giordano to pay restitution in the total amount of
$800,000.  On August 5, 2003, the Court granted the United
States' application for a writ of garnishment in the amount of
$249.69 per week because Giordano was only paying, at most, $50
per month toward his restitution obligations.  United States v.
Giordano, Crim. No. 94-398 (D.N.J. Aug. 5, 2003) (Simandle, J.).

        In the present motion, Giordano asserts that his
restitution should cease because the Court's Sentencing Order
did not state that restitution was due immediately and,
therefore, under the Victim and Witness Protection Act ("VWPA"),
18 U.S.C. § 3663f(2)[1], his restitution obligations ceased after
his probation term ended or five years after his prison term
ended.  In addition, Giordano argues that his restitution should
be offset by civil proceedings relating to his crime, such as
Padellaro, et al. v. Giordano, et. al., Civil No. 95-4607. For
the reasons discussed herein, Giordano's motion to vacate the
writ of garnishment will be denied because the Court's Order

---

[1] The VWPA was the governing statute at the time of Giordano's
sentencing and it still applies to Giordano, even though
Congress eliminated 3663(f) with the passage of the Mandatory
Victims Restitution Act ("MVRA") on April 24, 1996.

specified that restitution be due immediately and therefore Giordano's restitution has no time limit.

## II. BACKGROUND

### A. Briefing History

Giordano filed the present motion to vacate the garnishment currently being attached to his monthly social security checks. [Docket Item 3.]  The government filed opposition [Docket Item 6], and Giordano then filed a rebuttal motion [Docket Item 8]. Because Giordano raised new arguments in his rebuttal motion, the Court gave permission [Docket Item 9] to the government to submit a Sur-Reply [Docket Item 10].

In the rebuttal motion, Giordano relied on excerpts from the transcript of the sentencing hearing.  (Rebuttal Motion at 1.)  The Court asked Giordano to submit a copy of the transcript since he relied on the transcript in the rebuttal motion. [Docket Item 11.]  Giordano submitted excerpts of the sentencing transcript. [Docket Item 13.]  The government then filed a letter expressing its position on the transcript.  [Docket Item 14.]

### B. Facts

From 1978 to 1994, Giordano was the president of Local 125 of International Brotherhood of Teamsters, and a Trustee and Administrative Manager of the Local 125 Fund.  He misused funds that he was supposed to oversee. In 1995, Giordano pled guilty

to an Information charging him with conspiracy to receive bribes, in violation of 18 U.S.C. § 371, embezzling funds from an Employee Benefit Fund, in violation of 18 U.S.C. § 664, and Tax Evasion, in violation of 26 U.S.C. 7201. He was convicted of these violations by plea of guilty on July 29, 1995.  On August 16, 1996 this Court sentenced Giordano to serve 20 months imprisonment, followed by three years of supervised release, and ordered him to pay $800,000 in restitution. United States v. Giordano, Crim. No. 94-398 (D.N.J. Aug. 16, 1996); (Sentencing Order at 4).  The Court's Restitution Order, made pursuant to a plea agreement between the Defendant and the government, directed that "restitution be due immediately." Id. at 4.  The Court's Order also stated that restitution be in addition to "forfeiture and relinquishment of any claim for any future pension rights and any accrued pension rights." Id. at 4. Giordano served his sentence of imprisonment and has finished his period of supervised release.

On August 5, 2003, the Court granted an application from the United States for a writ of continuing garnishment from Giordano in the amount of $249.69 per week.  United States v. Giordano, Crim. No. 94.398 (D.N.J. Aug. 5, 2003).[2]  The United States originally sought a writ of continuing garnishment

---

[2] Giordano made a motion for reconsideration that the Court denied on October 3, 2003.

because Giordano refused to raise his restitution payments above
$50 per month.[3] In response, Giordano argued that garnishment of
his wages under the MVRA violated the Ex Post Facto Clause and,
alternatively, that numerous exemptions were applicable under
either the MVRA or VWPA.  Id. at 5. In its Opinion, the Court
made clear that pensions lost or forfeited, and monies otherwise
paid to the victims of Giordano would not offset amounts owed.
Id. at 17-18.  The Court carefully reviewed Giordano's
financials, adding all his sources of income and subtracting his
expenses and exemptions to arrive at a total for monthly
garnishment.  Consequently, the Court ordered "Giordano's total
disposable income, minus his disability payment from the Navy,
to be garnished." Id. at 28. From his release from prison until
present time, Giordano has made intermittent payments of nominal
amounts towards his restitution, totaling only $4,842.60 in 17
years since his sentencing. (Gov't Sur-Reply ("Sur-reply") at
2.)

## III. <u>DISCUSSION</u>

### A.  **Parties' Arguments**

The motion before the Court is a motion to vacate the writ
of garnishment.  Giordano requests an order terminating the
garnishment and his restitution obligation.  In support of his

---

[3] On or around June 2003, Giordano's probation officer at the time,
Ms. Mercado, requested he increase the amount in bi-weekly
restitution payments.

request that restitution cease, Giordano argues that a certain
section of the VWPA applies to his restitution order and this
section, 18 U.S.C. § 3663(f)(2), imposes limits on how long a
person can pay restitution. Section 3663(f)(2) would limit
Giordano's restitution obligation to either the end of probation
or five years after the release from prison or sentencing,
whichever date is later.  Giordano cites portions of the
sentencing transcript as purporting to support the argument that
restitution was not due immediately. (Rebuttal Mot. at 1.)

Conversely, the government asserts that 18 U.S.C. §
3663(f)(3) of the VWPA applies because the sentencing order
provided that "[r]estitution shall be due immediately."
(Sentencing Order at 4.)  The government contends that there is
no time limit on the Restitution Order.  In a letter submission,
the government demonstrates that the portions of the sentencing
transcript cited by Giordano indicate that the Court
distinguished § 3663(f)(2) from (f)(3) and made restitution due
immediately.

Giordano also argues that there are no remaining victims
because the Local 125 Fund, which was the main victim of his
crime, no longer exists.   Therefore, he argues that he should
not be required to pay further restitution.

In response, the government points to the Court's
Sentencing Order, which acknowledged three different victims:

Teamsters Local 125 Welfare Fund ($85,000); International Brotherhood of Teamsters, Local 125 ($10,000); and the Local 125 Fund ($705,000), none of which have been paid in meaningful amounts. Also, the United States argues that, even though the Local 125 pension fund has been dissolved, there are human victims remaining, "namely members of IBT Local 125 who placed their earnings in retirement accounts with the Local 125 fund." (Sur-reply at 4.)  The government argues that the Local 125 Pension Fund no longer exists because Giordano embezzled all the assets of the fund, and it would be unfair for Giordano to benefit from the demise of the fund.

Finally, Giordano asks that money previously garnished from his social security checks be returned.  Giordano requests that the amounts garnished be returned for one of two different time periods, from December 2011, or alternatively, January 2012 to present.  He does not explain specifically why the money should be returned, other than the general presumption that he does not feel the restitution is still justified.

The government answered that it has the power to petition the court for garnishments as well as the right to collect the money.  Also, the government argues that Giordano has not complied with the restitution obligations up until this point because Giordano has paid "less than $5,000 in 16 years" towards his restitution.  (Sur-reply at 5.)

7

### B.   Giordano's Restitution Obligation Has No Time Limit

Giordano argues that 18 U.S.C. § 3663(f)(2) applies to his motion, that time limits are imposed on the Restitution Order, and that his restitution payments should have ceased at the conclusion of supervised release, in accordance with § 3663(f)(2)(A).

Giordano's argument lacks merit. The Victim and Witness Protection Act ("VWPA")[4] mandates two different timelines under which defendants must pay restitution. If the restitution obligation falls under § 3663(f)(2), restitution obligations cease after a certain time period. Section 3663(f)(2) specifies that, if the Court orders restitution within a specified period, the last restitution payment shall be due at "the end of the period of probation, if probation is ordered; five years after the end of the term of imprisonment imposed, if the court does not order probation; and five years after the date of sentencing in any other case." 18 U.S.C. § 3663(f)(2). If the sentencing court does not specify a timeframe under § 3663(f)(2), then "restitution shall be made immediately." 18 U.S.C. § 3663(f)(3).

---

[4] This discussion focuses solely on the VWPA. The VWPA governs Giordano's restitution, rather than the Mandatory Victim Restitution Act ("MVRA"), because the VWPA was the governing law at the time of Giordano's crimes.

In other words, if the sentencing court did not place the restitution into a limited period and/or installments, subsection (f)(3) applies and there is no limitation on the collection of the restitution.  U.S. v. House, 808 F.2d 508 (7th Cir. 1986). The distinction between (f)(2) and (f)(3) is that (f)(2) limits the timeframe of a restitution order, while f(3) does not. Section (f)(3) applies to Giordano because the language "[r]estitution shall be due immediately" appears in the Sentencing Order. (Sentencing Order at 4.) The Sentencing Order did not specify any time limitations for restitution payments.

In support of his argument, Giordano relies on United States v. Holland, 380 F.Supp.2d 1264 (N.D. Ala. 2005), which is distinguishable solely on the language employed in the restitution order.  The Holland order provided that "upon release from custody, no further restitution payments are required and defendant is relieved of restitution responsibility."  Id. at 1.  This language is the opposite of the Restitution Order in this case.

Giordano also cites United States v. Abuhouran, 277 Fed. Appx. 132 (3d Cir. May 7, 2008). Abuhouran is inapposite because it was "not clear from the record" whether the defendant was ordered to pay restitution immediately.  Id. at 135.  The Abuhouran court stated that "if defendant was ordered to pay restitution immediately. . . he arguably could not invoke the

time limitations in § 3663(f)(2)." Abuhouran at 135 (citing FDIC.
v. Dover, 453 F.3d 710, 713-15 (6th Cir. 2006) (holding that
time limits contained in § 3663(f)(2) did not apply because the
sentencing court had ordered the restitution to be paid
immediately) and United States v. House, 808 F.2d 508, 511 (7th
Cir. 1986) (same)).

In Dover, the Sixth Circuit reversed the district court's
holding that the immediately payable restitution order entered
under 18 U.S.C. § 3663(f)(3) expired at the end of defendant's
probation period. The Dover court conducted a detailed statutory
interpretation of 18 U.S.C. § 3663(f)(1)-(3) and stated:

> subsections(f)(1)-(3), indicate[] that a cutoff date
> applies only where periodic or scheduled installments
> have been ordered. . . . However, it would be
> inconsistent with the policy of restitution to extend
> this logic to orders of immediately payable
> restitution. Defendants should not be able to escape
> payment of restitution permanently simply by avoiding
> payment for a while.

F.D.I.C., 453 F.3d at 715-16. See also United States v. Idema,
118 F. Appx 740, 743 (4th Cir. 2005) ("the time limitations in
the VWPA do not apply to this case because the district court
ordered Idema to pay restitution immediately. The time
limitations in § 3663(f) apply only when the district court
schedules payments over time or by installments.")

Giordano also relies on United States v. Holmes, 193 F.3d
200 (3d Cir. 1999). In Holmes, the district court calculated

10

defendant's restitution under both the MVRA and the VWPA because the crimes spanned the time frame in which both acts were applicable. For the restitution that fell under the VWPA, the Holmes district court did not consider the defendant's financial resources.  The case was remanded because, under the VWPA, the district court should have "consider[ed] the financial resources of defendant." Id. at 205.  In this case, the Court carefully considered Giordano's financial resources in its August 5, 2003 opinion, which granted the United States' motion to garnish Giordano's income.

The Sentencing Transcript, like the final Judgment of Conviction, clearly shows that restitution was due immediately. The Court specifically stated, "the restitution obligation is forever. It's until the 800,000 is paid." (Sentencing Tr. ("Tr.") 49:1-2.)  In addition, at the sentencing, the Court distinguished between § 3663(f)(2) and (f)(3) at the sentencing hearing in response to a question about whether § 3663(f)(2)(b) applied:

> All I know is a restitution judgment doesn't evaporate after five years. I think that what's being discussed in (F)(2)(B) is if I were to order installment payments, that I could have fashioned this order differently, that there be installment payments for the next five years or for five years following release . . . . But this, by setting it up like this, it means that for three years of supervised release, there will be payments in amounts that are determined by the probation department, but thereafter, any unpaid balance continues to be due and payable.

(Tr. 49:17-50:3.)  The Court was clear: restitution was due immediately, and the obligation would continue without any expiration date.

Similarly, there is no ambiguity in the Restitution Order issued by this Court.  The Order contained the language "restitution is due immediately" and provided no payment schedule for Giordano, meaning restitution is due in the full amount. (Sentencing Order at 4.)  Therefore, this Court finds that subsection § 3663(f)(3) applies and restitution was never limited and should not be limited now.

**C.  There are Remaining Victims**

Incredibly, Giordano argues that since there are no "victims" left, he should be relieved of his restitution obligation.  (Rebuttal Mot. at 3.) Specifically, he mentions that the Local 125 pension fund has dissolved since he was sentenced, and he alleges that there are no "victims" left to receive the restitution payments. Id.

As noted above, Giordano conveniently omits the fact that there were three funds that were found to be victims of his crimes: Teamsters Local 125 Welfare Fund, International Brotherhood of Teamsters Local 125, and the Local 125 Fund. There is no dispute that the other two victim funds still exist.

The VWPA provides that a federal court, when sentencing a
defendant convicted of a federal offense, may order that the
defendant make restitution to any victim of such offense.  18
U.S.C. § 3663(a)(3)(b)(1). The term "victim" is defined "as any
person directly harmed by the defendant's criminal conduct in
the course of the scheme, conspiracy, or pattern." 18 U.S.C. §
3663(a)(2).

The Restitution Order named the Local 125 Fund as one of
the victims and, even though the fund is now defunct due to
Giordano's misconduct, there are victims remaining.[5] In United
States v. Macchione, 660 F. Supp. 2d 918 (N.D. Ill. 2009), the
court held that the defendant was not excused from making
payments because the corporation was defunct, but instead should
pay restitution to the company that purchased the defunct
company's assets. The decision in Macchione suggests that when
an entity that is a victim no longer exists, restitution should
be directed to the person or persons holding the debt or owning
the assets of the defunct company. Even though the technical
victim in this case has been dissolved, there are human victims
who placed their savings in the pension fund, who were harmed by

---

[5] A pension fund or non-human entity may be named a victim. Klein
v United States, 861 F.2d 720 (6th Cir. 1988), cert den 491 U.S.
909 (1989). The Klein court held that a pension fund was a
victim of the accused's embezzlement and was entitled to
compensation under the VWPA.

Giordano's misconduct, who have not been compensated for their losses, and who deserve restitution.[6]  To find there are no victims left would allow Giordano to benefit from his previous criminal activity.  Since Giordano's embezzlement ultimately drained the Local 125 Fund, he cannot use the fact that the fund is defunct to his advantage.  In any event, at his current pace of payments, repaying the two remaining funds just their portion of the restitution (totaling $95,000) would take about 304 more years.  So, contrary to Mr. Giordano's statements that there are no victims, there indeed are two victim funds that will probably remain unpaid for several more lifetimes thanks to Mr. Giordano.

**D.  Giordano's Request for the Return of Previously Garnished Funds**

Giordano also requests the return of funds that have been withdrawn from his social security checks.  He asserts that he made significant payments toward restitution through the forfeit of his Local 125 Pension Fund and his account with the Local 125

---

[6] In addition, under the VWPA, there is no requirement that all victims be located before restitution is ordered. U.S. v. Berardini, 112 F.3d 606, 612 (2d Cir. 1997).  In Berardini, the Second Circuit affirmed the district court's ruling that it is acceptable to assign restitution to victims that have been identified, but not yet located. This is relevant to the present matter because there is a record of all former Local 125 employees that had retirement accounts in the Local 125 Fund. However, the whereabouts of some former Local 125 Fund account holders are unknown at this time. As a practical matter, Giordano's payments of restitution to date have been so minuscule that the prospect of finding the whereabouts of some of the former account holders should not be Giordano's concern.

fund and, thus, his previously garnished social security earnings should be returned.  In addition, Giordano states that the government "ha[s] withheld income tax returns that [he] was due from [his] filings with the Internal Revenue Service." (Rebuttal Mot. at 4.)  He requests the "Income Tax Returns that were not returned to [him]" be returned.  (Mot. to Vacate Garnishment at 7.) This argument scarcely requires comment.

To satisfy a judgment against a defendant, the government may apply to the court for a writ of garnishment "against property . . . in which the debtor has a substantial nonexempt interest." 28 U.S.C. § 3205(a).  In addition, an order of restitution creates a lien in favor of the United States on all property and rights to property of the defendant as if the liability were a liability imposed by the Internal Revenue Service ("IRS"). 18 U.S.C. § 3613(c). Social Security benefits and income tax returns are not exempt from garnishment.[7] Giordano's request is directed at the "money that has been taken

_____

[7] The only property exempt from garnishment is listed under 26 U.S.C. § 6334(a)(1)(8)-(10) and (12) of the Internal Revenue Code. Examples of exempt property are:  wearing apparel and school books; fuel provisions, furniture, and personal effects that does not exceed $6,250.00 in value; books and tools of trade, business, or profession that do not exceed $3,125.00 in value; unemployment benefits; undelivered mail; certain annuity and pension payments; workmen's compensation; judgments for support of minor children; certain service-connected disability payments; assistance under the Job Training Partnership Act; and minimum exceptions for wages and other income.  26 U.S.C. § 6334(a).

from [his] social security checks" and "withheld income tax returns," and he has not offered a legitimate basis to abandon the garnishment.  (Mot. to Vacate Garnishment at 7.) The Restitution Order will not be altered because social security income and income tax returns are not exempt from garnishment.

**IV. CONCLUSION**

 For the reasons set forth above, Giordano's motion to vacate the writ of garnishment will be denied.

**March 4, 2013**                                            **s/ Jerome B. Simandle**
                                                              Jerome B. Simandle
                                                              Chief U.S. District Judge